**EXHIBIT A**

**PUEBLO OF ISLETA ORDINANCE: PERMITTED GAMING**

BE IT ORDAINED AND ENACTED by the Tribal Council of the Pueblo of ISLETA, as follows:

**PURPOSE.**

The Tribal Council of the Pueblo of Isleta, hereinafter "Tribe," empowered to enact ordinances, hereby enacts this ordinance in order to set the terms for class III gaming operations and other operations on tribal lands.

**SECTION 1. PERMITTED ACTIVITIES; SCOPE OF GAMING.** The below-described commercial gaming activities are permitted:

A. All gaming authorized and permitted by the Ordinance entitled PUEBLO OF ISLETA CLASS II GAMING ORDINANCE, adopted and ordained on March 28, 1994; and

B. All Class III gaming, as described and defined in 25 CFR § 502 (25 CFR Ch. III (4-1-9 edition)), as that section may be amended from time to time, and any gaming permitted by the State of New Mexico for any purpose, by any person, organization or entity (and such gaming activity to otherwise being prohibited on Indian lands by a Federal statute dealing with a specific gaming activity, including without limitation, the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq*).

C. Notwithstanding the generality of the foregoing, class III gaming shall be subject to, delimited by, and conducted in compliance with the terms and conditions of the Compact, as it may, from time to time, be amended by the parties thereto.

**SECTION 2. OWNERSHIP OF GAMING.**

The Tribe shall have the sole proprietary interest in and responsibility for the conduct of any gaming operation authorized by this Ordinance, except as expressly provided in this Ordinance. Such responsibility shall be executed in a manner consistent with the terms and conditions of the Compact, as it may, from time to time, be amended by the parties.

**SECTION 3. USE OF GAMING REVENUE.**

A. Net revenue from gaming shall be used only for the following purposes: to fund tribal government operations and programs; provide for the general welfare of the Tribe and its members; promote tribal economic development; donate to charitable organizations; or help fund operations of local government agencies.

PLAINTIFFS'
EXHIBIT 9

B. If the Tribe elects to make per capita payments to tribal members, it shall authorize such payments only upon approval of a plan submitted to the Secretary of the Interior under 25 U.S.C. §2710(b)(3).

**SECTION 4. AUDIT.**

A. Consistent with the Audit and Financial Statements provisions of the Compact, as the same may, from time to time, be amended by the parties, the Pueblo of Isleta Gaming Regulatory Agency, hereinafter "agency" shall cause to be conducted annually an independent audit of gaming operations and shall submit the resulting audit reports to the National Indian Gaming Commission.

B. All gaming related contracts that result in the purchase of supplies, services, or concessions in excess of $25,000.00 annually, except contracts for professional legal and accounting services, shall be specifically included within the scope of the audit that is described in subsection A. above.

**SECTION 5. PROTECTION OF THE ENVIRONMENT AND PUBLIC HEALTH AND SAFETY.**

Class III gaming facilities shall be constructed, maintained, and operated in a manner that is consistent with the Public Health and Safety provisions of the Compact, as they may, from time to time, be amended, and which adequately protects the environment and the public health and safety.

**SECTION 6. LICENSES FOR EMPLOYEES.**

The agency shall ensure that the policies and procedures set out in this section are implemented with respect to key employees and primary management officials employed at any class III gaming enterprise operated on Indian lands:

A. Definitions. For the purposes of this section, the following definitions apply:

1. Any person, corporation, or other entity providing gaming services within or without a Gaming Facility, shall apply for and receive a license from the agency before participating in any way in the operation or conduct of any class III gaming conducted by the Tribe.

2. "Key employee" has the same meaning as defined at 25 C.F.R. § 502.14, including any subsequent amendment to such definition.

3. "Primary management official" has the same meaning as defined at 25 C.F.R. § 502.19, including any subsequent amendment to such definition.

B. Application Forms.

1. The following notice shall be placed on the application form for a key employee or a primary management official before that form is filled out by an applicant.

In compliance with the Privacy Act of 1974, the following information is provided: Solicitation of the information on this form is authorized by 25 U.S.C. 2701, et seq. The purpose of the requested information is to determine the eligibility of individuals to be granted a gaming license. The information will be used by the Tribal gaming regulatory authority and by the National Indian Gaming Commission members and staff who have need for the information in the performance of their official duties. The information may be disclosed to appropriate Federal, Tribal, State, local, or foreign law enforcement and regulatory agencies when relevant to civil, criminal, or regulatory investigations or prosecutions or when pursuant to a requirement of a tribe or the National Indian Gaming Commission in connection with the issuance, denial, or revocation of a gaming license, or investigations of activities while associated with a tribe or a gaming operation. Failure to consent to the disclosures indicated in this notice will result in a tribe's being unable to license you in a primary management official or key employee position.

The disclosure of your Social Security Number (SSN) is voluntary. However, failure to supply a SSN may result in errors in processing your application.

2. Existing key employees and primary management officials shall be notified in writing that they shall either:

   a. Complete a new application form at contains a Privacy Act notice; or
   b. Sign a statement that contains the Privacy Act notice and consent to the routine uses described in that notice.

3. The following notice shall be placed on the application form for a key employee or a primary management official before that form is filled out by an applicant:

   A false statement on any part of your application may be grounds for denying a license or the suspension or revocation of a license. Also, you may be punished by fine or imprisonment. (U.S. Code, Title 18, section 1001)

4. The agency shall notify in writing existing key employees and primary management officials that they shall either:

   a. Complete a new application form that contains a notice regarding false statements; or
   b. Sign a statement that contains the notice regarding false statements.

C. Background Investigations

1. The agency shall request from each applicant and his, her or its principals, if applicable, primary management official and from each key employee all of the following information:

   a. Full name, other names used (oral or written), social security number(s), birth date, place of birth, citizenship, gender, all languages (spoken or written);
   b. Currently and for the previous 10 years: business and employment positions held, ownership interests in those businesses, business and residence addresses, and driver's license numbers; provided, however, that any applicant who is a principal, primary management official, key employee, management contractor, manufacturer or supplier of gaming devices, and/or a person providing gaming services, must provide such information currently and from the age of eighteen (18);
   c. The names and current addresses of at least three personal references, including one personal reference who was acquainted with the applicant during each period of residence listed under paragraph (l)(b) of this section;
   d. Current business and residence telephone numbers, and all cell phone numbers;
   e. A description of any existing and previous business relationships with Indian tribes, including ownership interests in those businesses and a description of any potential or actual conflict of interests between such businesses and Indian tribes;
   f. A description of any existing and previous business relationships with the gaming industry generally, including ownership interests in those businesses;
   g. The name and address of any licensing or regulatory agency with which the person has filed an application for a license or permit related to gaming, whether or not such license or permit was granted;
   h. For each felony for which there is an ongoing prosecution or a conviction, the charge, the name and address of the court involved, and the date and disposition, if any;
   i. For each misdemeanor for which there is a conviction or an ongoing misdemeanor prosecution (excluding minor traffic violations) within 10 years of the date of the application, the name and address of the court involved and the date and disposition;
   j. For each criminal charge (excluding minor traffic charges), whether or not there is a conviction, if such criminal charge is within 10 years of the date of the application, and is not otherwise listed pursuant to paragraph (1)(h) or (1)(i) of this section, the criminal charge, the name and address of the court involved, and the date and disposition;
   k. The name and address of any licensing or regulatory agency with which the person has filed an application for an occupational license or permit as an applicant, principal, primary manager, official or key employee, whether or not such license or permit was granted;

l. A current photograph;
m. Any other information the agency deems relevant; and
n. Fingerprints consistent with the procedures adopted by the agency according to 25 C.F.R. §522.2(h). Pursuant to a Memorandum of Understanding between the Tribe and the National Indian Gaming Commission, tribal police officers shall forward fingerprint cards directly to the Commission.
o. The relevant financial records of the applicant for the three (3) years preceding the application.

2. The agency shall conduct an investigation, consistent with the Background Investigation provisions of the Compact, as they may, from time to time, be amended, sufficient to make a determination under subsection D below. In conducting a background investigation, the agency shall promise to keep confidential the identity of each person interviewed in the course of the investigation. The background investigation shall include a check of criminal history records information maintained by the Federal Bureau of Investigation. The agency shall request fingerprints from each primary management official and key employee.

D. Eligibility Determination.

1. The agency shall review a person's prior activities, criminal record, if any, and reputation, habits and associations to make a finding concerning the eligibility of a key employee or primary management official for receiving a gaming license. The finding and background investigation shall be contained in an investigative report. An investigative report shall include all of the following:

   a. Steps taken in conducting a background investigation;
   b. Results obtained;
   c. Conclusions reached; and
   d. The basis for those conclusions.

2. If the agency determines that licensing the person poses a threat to the public interest or to the effective regulation of gaming, or creates or enhances dangers of unsuitable, unfair, or illegal practices and methods and activities in the conduct of gaming, the agency shall not license that person in a key employee or primary management official position.

E. Report to National Indian Gaming Commission.

1. No later than sixty (60) days after the key employee or primary management official begins work at a gaming operation authorized by this ordinance, the agency shall prepare and forward to the National Indian Gaming Commission

a notice of results on each background investigation. The notice of results shall contain:

a. Applicant's name, date or birth, and social security number;
b. Date on which applicant began or will begin work as key employee or primary management official;
c. A summary of the information presented in the investigative report, which shall at a minimum include a listing of:
    i. Licenses that have previously been denied;
    ii. Gaming licenses that have been revoked, even if subsequently reinstated;
    iii. Every known criminal charge brought against the applicant within the last 10 years of the date of application; and
    iv. Every felony of which the applicant has been convicted or any ongoing prosecution.
d. A copy of the eligibility determination.

2. If a license is not issued to an applicant, the agency:

a. Shall notify the National Indian Gaming Commission; and
b. May forward copies of its eligibility determination and investigative report (if any) to the National Indian Gaming Commission for inclusion in the Indian Gaming Individuals Records System.

3. With respect to key employees and primary management officials, the agency shall retain applications for licensing, eligibility determinations, and reports (if any) of the background investigations for inspection by the Chairman of the National Indian Gaming Commission or his or her designee for no less than three (3) years from the date of termination of employment.

4. The gaming operation shall not employ any person who does not have a license after ninety (90) days.

F. Granting Gaming Licenses.

1. If, within a thirty (30) day period after the National Indian Gaming Commission receives a report, the National Indian Gaming Commission notifies the agency that it has no objection to the issuance of a license pursuant to a license application filed by a key employee or a primary management official for whom the tribe has provided an application and investigative report to the National Indian Gaming Commission, the agency may issue a license to such applicant.

2. The agency shall respond to a request for additional information from the Chairman of the National Indian Gaming Commission concerning a key

employee or a primary management official who is the subject of a report. Such a request shall suspend the 30-day period under paragraph G.l. of this section until the Chairman of the National Indian Gaming Commission receives the additional information.

3. If, within the thirty (30) day period described above, the National Indian Gaming Commission provides the agency with a statement itemizing objections to the issuance of a license to a key employee or to a primary management official for whom the agency has provided an application and investigative report to the National Indian Gaming Commission, the agency shall reconsider the application, taking into account the objections itemized by the National Indian Gaming Commission. The agency shall make the final decision whether to issue a license to such applicant.

4. Within thirty (30) days after the issuance of a license, the agency shall notify the National Indian Gaming Commission of its issuance.

G. Gaming License Suspensions and Revocations.

1. If, after the issuance of a gaming license, the agency receives from the National Indian Gaming Commission reliable information indicating that a key employee or a primary management official is not eligible for employment under subsection D. above, the agency shall suspend such license and shall notify in writing the licensee of the suspension and the proposed revocation.

2. The agency shall notify the licensee of a time and place for a hearing on the proposed revocation of a license.

3. After a revocation hearing, the agency shall decide to revoke or to reinstate a gaming license. The agency shall notify the National Indian Gaming Commission of its decision within 45 days of receiving notification that a primary management official or key employee is not eligible for employment.

H. Denying Gaming Licenses.

1. The agency shall not license a primary management official or key employee if an authorized agency official determines, in applying the standards in subsection 6.D. for making a license eligibility determination, that licensing the person:
   a. Poses a threat to the public interest;
   b. Poses a threat to the effective regulation of gaming; or
   c. Creates or enhances the dangers of unsuitable, unfair or illegal practices, methods and/or activities in the conduct of gaming.

**SECTION 7. LICENSE LOCATIONS.**

The agency shall issue a separate license to each place, facility, or location on Indian lands where class III gaming is conducted under this ordinance.

**SECTION 8. REPEAL.**

Only to the extent that they are inconsistent with this ordinance, all prior gaming ordinances, or parts thereof, are hereby repealed.

**SECTION 9. SAVING.**

Nothing in this Ordinance, nor any section or provision hereof, or amendment hereto, is intended to, nor shall it either by construction or application, invalidate or in any other way adversely affect, any other ordinance, resolution, law or regulation of the Pueblo of Isleta.

**SECTION 10. SEVERABILITY.**

In the event that any section or provision of this Ordinance, or any amendment to this Ordinance, is not approved or is made invalid, it is the intent of the Pueblo of Isleta that the remaining sections and provisions of this Ordinance shall continue in full force or effect.