UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MESCALERO APACHE TRIBE,
PUEBLO OF ISLETA,
PUEBLO OF POJOAQUE,
and PUEBLO OF SANDIA,

Plaintiffs,

v.

No. 2:26-cv-1517-MIS-GJF

KALSHI INC. and KALSHIEX LLC,

Defendants

ORAL ARGUMENT REQUESTED

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. The Tribes Succeed on the Merits of Their Claims Since the Law and Facts Establish that Kalshi Conducts Unlawful Gaming on Their Indian Lands Without Authority Under Their Laws or Complying with the Compact as Required Under IGRA ........ 2

A. *Kalshi indisputably offers and operates unlawful online sports betting ("OSB") for bettors on the Tribes' Indian lands in violation of IGRA since that is neither authorized by the Tribal Gaming Laws nor in compliance with the Compact* ........ 2

B. *The Tribes properly assert claims for violation of the Compact and their Tribal Gaming Laws regarding Kalshi's unlawful gaming on the Tribes' Indian lands* ........ 4

C. *The Tribes' sovereign authority and their IGRA-approved Gaming Laws have not been impliedly preempted by federal laws which reference neither* ........ 7

II. Private Business Status and Unsubstantiated Delay Cannot Avoid Irreparable Harm to the Tribes' Sovereignty From Allowing Kalshi's Unlawful Gaming on Their Lands ........ 8

III. Protecting the Tribes' Sovereign Authority to Enforce their Laws on their Indian Lands Strongly Outweighs Kalshi's Unsubstantiated Compliance Complaints ........ 9

IV. An Injunction Will Advance the Public Interest By Enforcing Dodd-Frank, IGRA, the Compact, and Tribal Law, and Protecting the Public Rather than Kalshi's Profits ........ 10

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## STATUTES


7 U.S.C. § 7a-2(c)(5)(C)(I) .......... 7

18 U.S.C. § 1166(b) .......... 4

25 U.S.C. § 2701(5) .......... 4, 5

25 U.S.C. § 2702(1) .......... 4

25 U.S.C. § 2702(2) .......... 4, 5, 6

25 U.S.C. § 2703(8) .......... 2, 3

25 U.S.C. § 2710(b)(2)(B) .......... 4

25 U.S.C. § 2710(d)(1) .......... 2, 6

25 U.S.C. § 2710(d)(1)(A) .......... 5

25 U.S.C. § 2710(d)(7)(A) .......... 2

25 U.S.C. § 2710(d)(7)(a)(ii) .......... 6

31 U.S.C. § 5361(b) .......... 3

Mescalero Apache Tribal Gaming Ordinance § 5(A)-(B) .......... 4

Mescalero Apache Tribal Gaming Ordinance § 5(D) .......... 4

Mescalero Apache Tribal Gaming Ordinance § 6 .......... 4

Mescalero Apache Tribal Gaming Ordinance § 7(B) .......... 4

Mescalero Apache Tribal Gaming Ordinance § 9 .......... 4

Mescalero Apache Tribal Gaming Ordinance §12(G) .......... 4

Mescalero Apache Tribal Gaming Ordinance § 13(A) .......... 4

Mescalero Apache Tribal Gaming Ordinance § 16(A) .......... 4

Mescalero Apache Tribal Gaming Ordinance § 17 .......... 10

Mescalero Apache Tribal Gaming Ordinance § 18(A) .......... 10

Pueblo of Isleta Gaming Ordinance § 1(C) .......... 4

Pueblo of Isleta Gaming Ordinance § 2 .......... 4

Pueblo of Isleta Gaming Ordinance § 3(A) .......... 4

Pueblo of Isleta Gaming Ordinance §§ 6-7 .......... 4

Pueblo of Pojoaque Gaming Ordinance §§ 10-8-5 to -7 .......... 4

Pueblo of Pojoaque Gaming Ordinance § 10-8-9(G) .......... 4

Pueblo of Pojoaque Gaming Ordinance § 10-8-10(B)(1) .......... 4

Pueblo of Pojoaque Gaming Ordinance § 10-8-12(A) .......... 10

Pueblo of Sandia Gaming Ordinance § I(C), (H) .......... 4

Pueblo of Sandia Gaming Ordinance § 2 .......... 4

Pueblo of Sandia Gaming Ordinance § 3(A) .......... 4

Pueblo of Sandia Gaming Ordinance §§ 6-7 .......... 4

**REGULATIONS**

17 C.F.R. § 38.151(b) .......... 7

17 C.F.R. § 40.11(a) .......... 3

25 C.F.R. § 293.2(d) .......... 2, 3

25 C.F.R. § 293.26 .......... 2, 3

25 C.F.R. § 502.4(c) .......... 2

Pueblo of Isleta Gaming Regulations § 4(C) .......... 10

**RULES**

D.N.M.LR-Civ. 7.1(a) .......... 8

Fed. R. Civ. P. 11(b)(2)-(3) .......... 8

Fed. R. Evid. 701 .......... 3

Fed. R. Evid. 701-702 .......... 9

**CASES**

Bad River Band of the Lake Superior Tribe v. Enbridge Energy Co., Inc., 184 F.4th 874 (7th Cir. 2026)....5

Becker v. Ute Indian Tribe, 11 F.4th 1140 (10th Cir. 2021) .... 8

Big Lagoon Rancheria v. California, 789 F.3d 947 (9th Cir. 2015) .... 7

Buchwald v. U.N.M. School of Medicine, 159 F.3d 487 (10th Cir. 1998) .... 10

California v. Iipay Nation, 898 F.3d 960 (9th Cir. 2018) .... 2

Dobbs v. Anthem Blue Cross & Blue Shield, 600 F.3d 1275 (10th Cir. 2010).... 7

Florida v. Seminole Tribe of Florida, 181 F.3d 1237 (11th Cir. 1999) .... 5

Fort Defiance Indian Hosp. Bd. v. Becerra, 604 F. Supp. 3d 1187 (D.N.M. 2022) .... 8

Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112 (2d Cir. 2005) .... 9

Hartman v. Kickapoo Tribe, 319 F.3d 1230 (10th Cir. 2003) .... 5

Hein v. Capitan Grande Band of Mission Indians, 201 F.3d 1256 (9th Cir. 2000) .... 5

Ho-Chunk Nation v. KalshiEx, LLC, 2026 WL 1284077 (W.D. Wis. May 11, 2026) .... 4, 5

HRI, Inc. v. EPA, 198 F.3d 1224 (10th Cir. 2000).... 7

In re Winter Storm Uri Nat. Gas Litig., 180 F.4th 1251 (10th Cir. 2026).... 7

KalshiEX LLC v. Assad, __ F.4th __, 2026 WL 2543846 (9th Cir. Aug. 28, 2026) ....3-4, 7, 9-10

KalshiEX LLC v. Knudsen, No. 26-cv-00028 (D. Mont. Aug. 27, 2026).... 9

KalshiEX, LLC v. Schuler, 2026 WL 657004 (S.D. Ohio March 9, 2026), inj. pending appeal denied, 2026 WL 1295806 (6th Cir. Apr. 24, 2026) ....10

Lexington Ins. Co. v. Smith, 117 F.4th 1106 (9th Cir. 2024).... 6

Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024) .... 3

Michigan v. Bay Mills Indian Cmty., 572 U.S. 782 (2014) .... 2, 3

N.M. Dep't of Game & Fish v. U.S. Dep't of Interior, 854 F.3d 1236 (10th Cir. 2017) .... 1

Navajo Nation v. Dalley, 896 F.3d 1196 (10th Cir. 2018) .... 2

Nevada v. KalshiEx, LLC, No. 26-0C-050 (Nev. 1st Dist. July 24, 2026) .................................. 7

New Mexico v. Dep't of the Interior, 854 F.3d 1207 (10th Cir. 2017) ......................................... 6

NLRB v. Pueblo of San Juan, 276 F.3d 1186 (10th Cir. 2002) .................................................... 7

Osage Nation v. Oklahoma ex rel. Okla. Tax Comm'n, 597 F. Supp. 2d 1250 (N.D. Okla. 2009) ....................................................................................................5

South Dakota v. Bourland, 508 U.S. 679 (1993) ............................................................................ 6

Stewart v. Keyes, 295 U.S. 403 (1939)............................................................................................ 6

Struss v. U.S. Dep't of Agric., 2019 WL 2490721 (D.Kan. June 14, 2019) ................................ 6

United States v. Cooley, 593 U.S. 345 (2021).......................................................................... 6, 8

United States v. Wisconsin, No. 2:26-cv-00749 (E.D. Wis. July 29, 2026), appeal docketed, No. 26-2636 (7th Cir. Aug. 10, 2026) ...........................................................5

Ute Indian Tribe v. Lawrence, 22 F.4th 892 (10th Cir. 2022) ....................................................... 1

Whitman v. Am. Trucking Ass'ns, 531 U.S. 457 (2001) ............................................................ 4

Wyoming ex rel. Crank v. United States, 539 F.3d 1236 (10th Cir. 2008) .................................. 5

Ysleta Del Sur Pueblo v. Texas, 596 U.S. 685 (2022).................................................................. 6

**OTHER AUTHORITIES**

https://edition.cnn.com/2026/08/28/business/young-adults-trading-kalshi (Sept. 1, 2026) ......... 10

https://kalshi.com ..........................................................................................................................7

Letter from Mescalero Apache Tribe to CFTC (July 27, 2026), available at https://downloads.regulations.gov/CFTC-2026-1189-0163/attachment_1.pdf ..........................6

Monique N. Rodríguez et al., Prevalence and Predictors of Problem Gaming Among Adults in N.M.: A Sociodemographic Analysis, 42 J. of Gaming Studies 1305 (2025) ...........10

Monique N. Rodríguez et al., Prevalence of Adolescent Problem Gambling: Examining Sociodemographic Risk Factors in N.M., 25 Int'l Gambling Studies 107 (2025).....................10

Nizan Geslevich Packlin & Sharon Rabinovitz, Prediction Markets as a Public Health Threat, Science, Apr. 16, 2026 ...........................................................................................10

Plaintiffs Mescalero Apache Tribe ("Mescalero"), Pueblo of Isleta ("Isleta"), Pueblo of Pojoaque ("Pojoaque"), and Pueblo of Sandia ("Sandia") (together, "Tribes") hereby reply in support of their motion for a preliminary injunction ("Motion"), Dkt. No. 23, since they satisfy all four factors for an injunction. First, the Tribes prevail on the merits of their claims that Defendants Kalshi, Inc. and KalshiEX, LLC (together, "Kalshi") unlawfully operate on the Tribes' Indian lands class III gaming that is neither authorized by their Tribal Gaming Laws nor conducted in conformance with their Compact under the Indian Gaming Regulatory Act ("IGRA"). Second, the Tribes will suffer irreparable injury without an injunction to enforce all those, which Kalshi cannot avoid based on private business status or unsubstantiated delay. Third, the sovereign injuries to the Tribes strongly outweigh Kalshi's unjustified complaints about compliance. Fourth, an injunction here will advance the public interest by protecting people and enforcing IGRA, the Tribal Gaming Laws, and the Compact without impairing lawful actions. In sum, unable to overcome IGRA's plain text, Kalshi doubles down on its rash of red herrings via many material misstatements about this case and the law. None of that improves Kalshi's odds. An injunction remains fully warranted.

**ARGUMENT**

A preliminary injunction requires clearly showing: (1) substantial likelihood of success on the merits; (2) irreparable injury if it is denied; (3) threatened injury that outweighs the injunction's injury to the opponent; and (4) that it is not adverse to the public interest. *N.M. Dep't of Game & Fish v. U.S. Dep't of Interior*, 854 F.3d 1236, 1245-46 (10th Cir. 2017). A preliminary injunction that alters the status quo also requires a strong showing for both the likelihood of success and the balance of harms. *Id.* at 1246 n.15. The Tribes satisfy those standards in spades. Indeed, since there is now no factual dispute and the Tribes establish "'*actual success* on the merits'" for "'purely legal'" issues, a permanent injunction should issue since that "best serves the interests of judicial economy." *Ute Indian Tribe v. Lawrence*, 22 F.4th 892, 908-09 (10th Cir. 2022) (cites omitted).

## I. The Tribes Succeed on the Merits of Their Claims Since the Law and Facts Establish that Kalshi Conducts Unlawful Gaming on Their Indian Lands Without Authority Under Their Laws or Complying with the Compact as Required Under IGRA.

IGRA provides that "Class III gaming activities shall be lawful on Indian lands only if . . . authorized by" a federally approved tribal gaming ordinance and "conducted in conformance with" an effective tribal-state gaming compact. 25 U.S.C. § 2710(d)(1). IGRA also provides that federal "district courts shall have jurisdiction over . . . any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of a Tribal-State compact . . . that is in effect." *Id.* § 2710(d)(7)(A) (emphasis added); Compl. ¶ 3 (quoting same). Per those provisions and unrefuted evidence, the Tribes fully establish claims for injunctive relief that Kalshi operates class III gaming on their Indian lands in violation of IGRA, the Tribes' identical federally effective, tribal-state gaming compact ("Compact"), and their respective, federally approved tribal gaming laws ("Tribal Gaming Laws"). None of the diverse dissembling in Kalshi's Opposition to the Motion ("Response"), Dkt. No. 50, avoids any of that.

### A. *Kalshi indisputably offers and operates unlawful online sports betting ("OSB") for bettors on the Tribes' Indian lands in violation of IGRA since that is neither authorized by the Tribal Gaming Laws nor in compliance with the Compact.*

Kalshi does not dispute that it openly operates on each of the Tribes' Indian lands and fails to refute any of the eight detailed declarations about thorough investigations of Kalshi's activities there. *See* Dkt. Nos. 23-1 to 23-8. Kalshi also implicitly concedes by failing to dispute that its operations constitute "class III gaming" under IGRA's broad definition and regulations thereunder. *See* 25 U.S.C. § 2703(8); 25 C.F.R. §§ 293.2(d), 293.26, 502.4(c). Kalshi also cannot dispute that only the location of the bettor when placing a bet determines where the bet occurs under IGRA. *See Michigan v. Bay Mills Indian Cmty.* ("*Bay Mills*"), 572 U.S. 782, 792 (2014); *Navajo Nation v. Dalley*, 896 F.3d 1196, 1207 (10th Cir. 2018); *California v. Iipay Nation* ("*Iipay*"), 898 F.3d 960, 967 (9th Cir. 2018). All that precludes avoiding enforcement of IGRA here.

Instead, Kalshi wrongly contends that IGRA "does not address" online gaming and the declarations are just "[l]egal conclusions masquerading as testimony" and only "assume" that Kalshi's operations are wagers or sports bets, based on the Unlawful Internet Gambling Enforcement Act ("UIGEA") and a recent notice of proposed rulemaking ("NPRM"). Resp. at 9, 12, 14, 19-20 & nn. 9, 13. First, IGRA squarely encompasses online gaming. *See* 25 U.S.C. § 2703(8); 25 C.F.R. §§ 293.2(d), 293.26; Compl. ¶¶ 26-27. Kalshi mischaracterizes *Iipay* and untenably asserts that *Bay Mills* is irrelevant and conflates it with *Montana*. *Compare* Resp. at 9 n.9, 12, 14 *with Bay Mills* and *Iipay*, *supra.* Second, the eight detailed declarations properly prove relevant facts and offer opinions based on the declarants' own perceptions and laws they enforce. *See* Fed. R. Evid. 701. Third, the declarations establish what Kalshi "disingenuous[ly]" denies: "Kalshi's sports event contracts have the hallmarks of sports betting[,]" as Kalshi has advertised and which "is a quintessential form of gambling." *KalshiEX LLC v. Assad* ("*Assad*"), __ F.4th __, 2026 WL 2543846, *9, *10 (9th Cir. Aug. 28, 2026). That is confirmed by common sense since "*everyone*, including Kalshi, knows" that "placing sports bets, even when called by another name, is still gambling." *Id.* at *10. Fourth, Kalshi cannot avoid IGRA's definition of class III gaming based on UIGEA since UIGEA disclaims that it does not "alter[]" or "limit[]" "any Federal or State law or Tribal-State compact prohibiting, permitting, or regulating gambling[.]" 31 U.S.C. § 5361(b); *see Assad*, *supra*, at *9 n.4 (rejecting same). Fifth, the cited NPRM is immaterial since "'proposed regulations have no legal effect.'" *Assad*, *supra*, at *13 (citation omitted). And even if that rule is finalized, courts "do not defer to the CFTC's [re]definition of gaming." *Id.* at *14 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) regarding 17 C.F.R. § 40.11(a)).

Next, Kalshi aptly concedes that it "has never argued that Dodd-Frank repealed IGRA and does not take that position here." Resp. at 14. "Congress has spoken on gambling repeatedly, deliberately, and specifically[,]" in IGRA and otherwise, and "sports betting . . . has long been

regulated by the States and Tribes." *Assad*, *supra*, at *9, *14. Congress, therefore, "did not impliedly repeal or amend those" "decades of careful regulation of gambling" via "'vague terms'" or "broad definitions of the words used in" the Dodd-Frank Wall Street Reform Act. *Id.* at *10, *15 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

Finally, Kalshi's undisputed OSB on the Tribes' Indian lands is unlawful under IGRA. That is neither "authorized by" the Tribes' Gaming Laws nor "conducted in conformance with" the Compact. That is manifest since the Compact and those Laws only allow gaming at physical facilities for people 21 and older, operated and regulated by and to generate revenue for the Tribes per IGRA and prohibit other gaming, while "'non-tribal Internet gaming . . . would conflict with the State's promise of exclusivity'" in the Compact.[1] Kalshi's argument that Isleta's and Sandia's claims fail since their Gaming Laws rely on state law, Resp. at 15-16, itself fails since both prohibit gaming on their Indian lands except as allowed by IGRA and the Compact, both of which Kalshi violates. *See supra* note 1. Nor can Kalshi avoid the Compact by not being a party to it since it is a creature of IGRA, which governs all Indian lands gaming, only authorizes such gaming for tribes, and otherwise proscribes such gaming. *Compare* Resp. at 16-17 *with* 18 U.S.C. § 1166(b); *supra* note 1; *Ho-Chunk Nation v. KalshiEx, LLC*, 2026 WL 1284077, *5 (W.D. Wis. May 11, 2026).

**B. *The Tribes properly assert claims for violation of the Compact and their Tribal Gaming Laws regarding Kalshi's unlawful gaming on the Tribes' Indian lands.***

Kalshi's arguments that the Tribes have no rights of action and no jurisdiction also fail. First, as quoted in the Complaint starting on page 1, IGRA authorizes "any cause of action" by Tribes to enjoin gaming on Indian lands that violates a compact. 25 U.S.C. § 2710(d)(7)(A)(ii). Kalshi oddly asserts that "[t]he Tribes have not brought suit under that provision" and that it

[1] *See* 25 U.S.C. §§ 2701(5), 2702(1)-(2), 2710(b)(2)(B); Compact §§ 3(A), 3(C), 4(B)(1), 17; Compl. ¶ 40 (quoting federal approval); Mescalero Ord. §§ 5(A), (B), (D), 6, 7(B), 9, 12(G), 13(A), 16(A); Isleta Ord. §§ 1(C), 2, 3(A), 6-7; Pojoaque Ord. §§ 10-8-5 to -7, -9(G), -10(B)(1); Sandia Ord. §§ I(C), I(H), 2, 3(A), 6-7; Mot. at 8 n.4 (Compact and Laws links); Dkt. No. 23-9.

"provides tribes with only two limited causes of action" Resp. 1, 4-5 & nn.3-4, 16. That conflates "any" with "two" and misses the recited jurisdictional basis starting on the Complaint's first page. That cited provision readily supports the Tribes' claims to enforce the Compact and their Tribal Gaming Laws under IGRA, since those govern all gaming on Indian lands. *See Ho-Chunk Nation*, *supra*, at *5-*6 (finding tribal right of action under that provision); Mot. at 15, 17 (citing *Cayuga Nation*, *Coeur d'Alene Tribe*, and *Crosby Lodge*). Kalshi's inapt cites prove nothing.[2]

Second, the Tribes readily may sue to protect their sovereign interests, including to enforce their Gaming Laws, just as the CFTC has sued to enforce its laws on Designated Contract Markets ("DCMs").[3] That especially applies under IGRA's "statutory basis for" the Tribes' "exclusive right to regulate gaming activity on Indian lands" to shield their communities from "corrupting influences" and ensure that each Tribe "is the primary beneficiary of the gaming operation" on their lands. 25 U.S.C. §§ 2701(5), 2702(2). Only the Tribes can enforce their own sovereign laws.

Third, Kalshi cannot avoid that IGRA affirms and incorporates sovereign tribal authority to enforce the federally approved Tribal Gaming Laws governing all class III gaming on Indian lands, including against Kalshi. *See* 25 U.S.C. §§ 2701(5), 2710(d)(1)(A). "Tribes possess inherent sovereign authority to determine who may enter the reservation; to define the conditions upon which they may enter; to prescribe rules of conduct; and to expel those who enter the reservation without proper authority.'" *Bad River Band of Lake Superior Tribe v. Enbridge Energy Co., Inc.*, 184 F.4th 874, 890-91 (7th Cir. 2026) (citation omitted). That comports with the recent

---

[2]*Compare* Resp. at 4 *with Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230, 1232 (10th Cir. 2003) (no private right of action against tribes); *Hein v. Capitan Grande Band of Mission Indians*, 201 F.3d 1256, 1260 (9th Cir. 2000) (same); *Florida v. Seminole Tribe of Florida*, 181 F.3d 1237, 1242 (11th Cir. 1999) (no cause of action where there was no compact).

[3]*Compare Osage Nation v. Oklahoma ex rel. Okla. Tax Comm'n*, 597 F. Supp. 2d 1250, 1253-54 (N.D. Okla. 2009) (citing cases); *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008) *with United States v. Wisconsin*, 2026 WL 2474512, *4 (E.D. Wis. July 29, 2026), *appeal docketed*, No. 26-2636 (7th Cir. Aug. 10, 2026) (citing more cases).

reaffirmation of a tribe's inherent "'civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.'" *United States v. Cooley*, 593 U.S. 345, 350 (2021). That "fits the present case, almost like a glove[,]" *id.*, since Kalshi's operations harm both the Tribes' economic security and welfare.[4] Moreover, "[n]o part of this test" governing tribal authority over nonmember businesses "requires the physical presence of a nonmember on a reservation." *Lexington Ins. Co. v. Smith*, 117 F.4th 1106, 1108 (9th Cir. 2024). The Tribes hardly would have "exclusive right to regulate gaming activity" under IGRA if that federally sanctioned authority does not cover noncitizens. None of Kalshi's cases avoid that.[5]

Finally, IGRA delegates authority since it provides "a statutory basis for" tribal gaming regulation, requires that authorization for gaming to be "lawful[,]" and authorizes tribes to enjoin unlawful gaming. 25 U.S.C. §§ 2702(2), 2710(d)(1), 2710(d)(7)(a)(ii). Kalshi miscites cases since none of those involve such an express congressional affirmation of tribal authority.[6] Compliance with the Tribes' federally approved Gaming Laws is a core part of IGRA's regime, which uses the same formula found to constitute valid delegations to tribes for liquor and air regulation, as the Tribes properly pled. *Compare* Resp. at 7-8 & n.5 *with* Compl. ¶¶ 16, 29-30; Mot. at 14-15.

---

[4] *See*, *e.g.*, *supra* text accompanying note 1 and *infra* text accompanying note 8; Letter from Mescalero Apache Tribe to Commodity Futures Trading Comm'n (July 27, 2026), available at https://downloads.regulations.gov/CFTC-2026-1189-0163/attachment_1.pdf (NPRM comments noting on page 2 that Mescalero relies on gaming for 95% of its annual budget and adverse impacts to that operation "will cause immediate job losses and require cuts to Tribal programs that benefit the community"); Mot. at 2 n.1 (authority for judicial notice of government documents).

[5] *Compare* Resp. at 5 *with Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 704 (2022) (federal law merely "enacted in accordance with" tribal law); *Stewart v. Keyes*, 295 U.S. 403, 415 (1939) (federal law only "gave its assent to" state law application); *Struss v. USDA*, 2019 WL 2490721, at *4 (D. Kan. June 14, 2019) (regulation only "'recognize[d] and appl[ied]'" "internal manual").

[6] *Compare* Resp. at 7 *with South Dakota v. Bourland*, 508 U.S. 679, 687 (1993) ("Congress has abrogated the Tribe's rights . . . to regulate"); *New Mexico v. DOI*, 854 F.3d 1207, 1226 (10th Cir. 2017) (rejecting implied agency authority that "'contravenes the plain language of IGRA'").

### C. *The Tribes' sovereign authority and their IGRA-approved Gaming Laws have not been impliedly preempted by federal laws which reference neither.*

Kalshi misplaces arguments about implied preemption since Kalshi does not dispute that Dodd-Frank says nothing about tribes while prior federal commodity laws predate IGRA. *See* Mot. at 18-19. First, federal laws do not abrogate tribes' "'sovereign authority to regulate economic activity within their . . . territory'" "absent express congressional authorization." *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1283-84 (10th Cir. 2010) (quoting *NLRB v. Pueblo of San Juan*, 276 F.3d 1186, 1192-93 (10th Cir. 2002) (en banc)). Kalshi cannot avoid that because IGRA confirms tribal gaming regulatory authority. *Compare* Resp. at 15 *with supra* § I.B. Second, Kalshi cannot avoid the difference between abrogation of tribal authority and preemption of state law because "[t]he federal government bears a special trust obligation to protect . . . tribal . . . jurisdiction." *HRI, Inc. v. EPA*, 198 F.3d 1224, 1245 (10th Cir. 2000); *contra* Resp. at 15-16. Third, Kalshi misstates that the Tribes "target" DCMs generally because preemption must focus only on tribal regulation of OSB as gaming.[7] Fourth, purported preemption fails as both an elephant in a mousehole and a major question. *Assad*, *supra*, at *10, *14-*15. Fifth, this case is not an end-run around agency review since the Tribes are "not challenging any determination by the CFTC about Kalshi's event contracts." *Id.* at *6 (distinguishing *Big Lagoon Rancheria v. California*, 789 F.3d 947, 953 (9th Cir. 2015) (en banc)); *contra* Resp. at 21 n.19. Sixth, Dodd-Frank does not preempt "activity that is unlawful under" IGRA and the DCM "impartial access" regulation only concerns non-discrimination. 7 U.S.C. § 7a-2(c)(5)(C)(I); 17 C.F.R. § 38.151(b); *contra* Resp. at 2, 24-26. Finally, Kalshi has not shown that will be shut it down due to court-ordered geofencing. *See Assad*, *supra*, at *16; Stip. Order, *Nevada v. KalshiEx, LLC*, No. 26-0C-050 (Nev. 1st Dist. July 24, 2026).

[7] *Compare* Resp. at 14-15, 16 *with* Mot. at 19; *In re Winter Storm Uri Nat. Gas Litig.*, 180 F.4th 1251, 1261 (10th Cir. 2026); *Assad*, *supra*, at *17 (making same point to reject field preemption); https://kalshi.com (without sports, still offering 10 other "event contract" categories).

## II. Private Business Status and Unsubstantiated Delay Cannot Avoid Irreparable Harm to the Tribes' Sovereignty From Allowing Kalshi's Unlawful Gaming on Their Lands.

Kalshi's ongoing unlawful operations on the Tribes' Indian lands are "'an invasion of tribal sovereignty'" that imposes irreparable injury to them via "'significant interference with their self-government[,]'" which is "'not easily subject to valuation'" and "'cannot be remedied by any other relief[.]'" Mot. at 30, 33 (quoting cases). Kalshi cannot avoid those cases as only limiting state encroachment while private businesses may simply "declin[e] to submit" to tribal sovereignty. *Compare* Resp. 22 & n.20 *with Cooley*, 593 U.S. at 351. Instead, tribal authority over non-Indian activities on Indian lands "'presumptively'" applies "'unless affirmatively limited by a specific . . . federal statute.'" *Becker v. Ute Indian Tribe*, 11 F.4th 1140, 1149 (10th Cir. 2021) (cite omitted).

Kalshi also wrongly objects that the Tribes' injuries can be quantified in damages. Resp. at 23. The Tribes seek to enforce their duly-enacted, federally approved Gaming Laws and protect their sovereign governmental operations and interests. *See* notes 1, 4, 8. That is unquantifiable.

Nor does the Motion's timing undermine the Tribes' harms. Delay precludes irreparable injury only if it is unreasonable and prejudicial and reflects sitting on rights. *Ft. Defiance Indian Hosp. Bd. v. Becerra*, 604 F. Supp. 3d 1187, 1260-61 (D.N.M. 2022). Here, the Tribes had to hire common counsel and ensure that their claims "are warranted by existing law" with "evidentiary support[.]" *See* Fed. R. Civ. P. 11(b)(2)-(3). The Tribes also could not file the Motion until Kalshi was served and represented, since "a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M.LR-Civ. 7.1(a). The Tribes promptly requested concurrence, but agreed to a briefing schedule to accommodate Kalshi's request for staggered, consolidated briefing and more time to move to dismiss. *See* Dkt. No. 9. That rule compliance and professional courtesy are not unreasonable or prejudicial and do not nullify sovereign harms from Kalshi violating the Gaming Laws. That contrasts with "Kalshi's repeated agreement to stay . . .

for months at a time[,]" which "fatally undermine[d] its ability" to establish irreparable harm. Order, *KalshiEX LLC v. Knudsen*, No. 26-cv-00028, at 3 (D. Mont. Aug. 27, 2026).

### III. Protecting the Tribes' Sovereign Authority to Enforce their Laws on their Indian Lands Strongly Outweighs Kalshi's Unsubstantiated Compliance Complaints.

To balance the equities for the Tribes' sovereign authority to regulate unlawful gaming on their Indian lands, the Tribes properly documented and explained that Kalshi could comply by geofencing. *See* Mot. at 34-36; Dkt. No. 23-8; Fed. R. Evid. 701-702. Kalshi objects that the Tribes' evidence is "uninformed and unsupported[,]" that comparisons to DraftKings, FanDuel, and JackPocket are unwarranted, and that Kalshi would face "severe" "commercial and operations harm[,]" including potential enforcement by the CFTC. Resp. at 23-25. Those arguments all fail because they are supported by nothing besides rampant, unfounded conjecture.

"The costs of geofencing are unlikely to be too expensive for a company of Kalshi's size," while Kalshi's other purported harms "are either speculative or self-inflicted." *Assad*, *supra*, at *17. Namely, Kalshi's concerns about "impartial access" and that it "may lose its DCM status" are unfounded. *Id.* at *16, *17. Also, "it is unlikely that any . . . harm is done by what is likely a lawful . . . enforcement proceeding." *Id.* at *18. Indeed, Kalshi already restricts access to its OSB in three states, Resp. at 25, and Kalshi and its sportsbook competitors use geofencing, Mot. at 5-6. "Kalshi could do [more of] the same; it just refuses to do so and instead seeks a competitive advantage[.]" *Assad*, *supra*, at *16. Such "ordinary compliance costs are typically insufficient to constitute irreparable harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005).

Finally, Kalshi complains that an injunction would require it to liquidate open positions. Resp. at 24-25. Not so, since the Tribes only seek prospective injunctive relief to stop Kalshi from offering and accepting OSB on their Indian lands. For already-placed bets, Kalshi need only retain records as it already must to calculate the proper civil penalties of $5,000 per violation owed to

Mescalero, Isleta, and Pojoaque. *See* Mescalero Ord. §§ 17, 18(A); Isleta Regs. § 4(C); Pojoaque Ord. § 10-8-12(A). Given all this, the balance of the hardships tilts heavily in the Tribes' favor.

## IV. An Injunction Will Advance the Public Interest By Enforcing Dodd-Frank, IGRA, the Compact, and Tribal Law, and Protecting the Public Rather than Kalshi's Profits.

Kalshi wrongly contends that public interests support denying an injunction to protect "a uniform, national derivatives regime" and to avoid "highly disruptive" termination of nonparty contracts. Resp. 26-27. Dodd-Frank intended to "'prevent gambling through the futures markets' and to 'protect the public interest from gaming and other events contracts.'" *Assad*, *supra*, at *4; Compl. ¶ 69 (same). Also, "the CFTC is not a national gambling regulator" since Dodd-Frank neither impliedly repeals other federal gambling laws like IGRA nor preempts state gambling laws. *Assad*, *supra*, at *9-*10, *14-*16. Moreover, the Tribes explain above that Kalshi's customer contracts need not be unwound. Instead, public interests support enforcing IGRA, the Compact, and the Tribal Gaming Laws, and protecting tribal authority and the gaming public. S*ee* Compl. ¶¶ 23, 38-43, 45-47, 50-52, 54-55, 57-59. In particular, an injunction here would serve compelling government interests in public health by enforcing tribal laws on sports gambling, especially for those "too young to participate in legal sports gambling" and "particularly vulnerable to problem gambling" but with unrestricted access to and substantial use of Kalshi's online operations.[8]

## CONCLUSION

For all the reasons above and in evidence, an injunction should be entered against Kalshi.

[8] *KalshiEX, LLC v. Schuler*, 2026 WL 657004 at *10 & n.9 (S.D. Ohio March 9, 2026), *inj. pending appeal denied*, 2026 WL 1295806 (6th Cir. Apr. 24, 2026); *see Buchwald v. U.N.M. School of Medicine*, 159 F.3d 487, 498 (10th Cir. 1998); Nizan Geslevich Packlin & Sharon Rabinovitz, Prediction Markets as a Public Health Threat, Science, Apr. 16, 2026, at 257, 258-59; Monique N. Rodríguez *et al.*, Prevalence and Predictors of Problem Gaming Among Adults in N.M.: A Sociodemographic Analysis, 42 J. of Gaming Studies 1305, 1321, 132 (2025); Monique N. Rodríguez *et al.*, Prevalence of Adolescent Problem Gambling: Examining Sociodemographic Risk Factors in N.M., 25 Int'l Gambling Studies 107, 117, 122 (2025); https://edition.cnn.com/2026/08/28/business/young-adults-trading-kalshi (Sept. 1, 2026).

Submitted September 4, 2026

/s/Daniel I.S.J. Rey-Bear
Daniel I.S.J. Rey-Bear
Tim H. McLaughlin
Brian P. McClatchey (pro hac vice)
Rey-Bear McLaughlin, LLP
421 W Riverside Ave, Suite 1004
Spokane, WA 99201-0410
telephone: 505-238-1954
dan@rbmindianlaw.com
tim@rbmindianlaw.com
brian@rbmindianlaw.com

Nelva Cervantes
Joaquin Gallegos
Office of General Counsel
Mescalero Apache Tribe
P.O. Box 227
Mescalero, NM 88340
telephone: 575-464-4494
ncervantes@mescaleroapachetribe.com
jgallegos@mescaleroapachetribe.com

additional attorneys for
Mescalero Apache Tribe

Lindsay Cutler
Jordan Oglesby
Legal Department
Pueblo of Isleta
P.O. Box 1270
Isleta, NM 87022
telephone: 505-869-9716
lindsay.cutler@isletapueblo.com
jordan.oglesby@isletapueblo.com

additional attorneys for Pueblo of Isleta

Dianna Kicking Woman
Robert A. Waldroup
Alicianna C. Martinez
Legal Department
Pueblo of Pojoaque
30 Buffalo Thunder Trail
Santa Fe, NM 87506
telephone: 505-455-4581

dwoman@pojoaque.org
rwaldroup@pojoaque.org
acmartinez@pojoaque.org

additional attorneys for Pueblo of Pojoaque

Steffani A. Cochran
General Counsel
Pueblo of Sandia
481 Sandia Loop
Bernalillo, NM 87501
telephone: 505-771-7967
scochran@sandiapueblo.nsn.us

additional attorney for Pueblo of Sandia

## CERTIFICATE OF SERVICE

I certify that I served Defendants with the foregoing Plaintiffs' Reply in Support of Motion for Preliminary Injunction through the Court's electronic filing system (CM/ECF) as required by D.N.M.LR-Civ. 5.1(b) on September 4, 2026.

/s/Daniel I.S.J. Rey-Bear
Daniel I.S.J. Rey-Bear